IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CURTIS LEE MORRISON,

    Petitioner,                               No. CIV S-06-284 MCE CHS P

    vs.

THOMAS CAREY, Warden,

    Respondent.                <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

## I. INTRODUCTION

Petitioner Curtis Lee Morrison is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. Petitioner is currently serving an indeterminate sentence of seven years to life in state prison following his 1974 convictions for murder and other offenses in Contra Costa County. Here, petitioner does not challenge the constitutionality of those convictions, but rather, the execution of his sentence, and specifically, the December 17, 2003 decision of the Board of Prison Terms finding him unsuitable for parole.

## II. BACKGROUND

The facts of petitioner's life crime were summarized by the Contra Costa County Superior Court on state habeas corpus review:

/////

> [O]n April 21, 1973, Officer Tarantino responded to a request for assistance on Alhambra Avenue, Martinez. As the officer approached the scene, Petitioner was observed to be laying on the grass approximately four feet from his truck. Witnesses observed Officer Tarantino approach Petitioner in a half-kneeling position to take a pulse. The next observation of a passing witness was that the officer and Petitioner were standing near the truck with the officer talking to Petitioner in a search position, being frisked. A scuffle ensued and Petitioner took Officer Tarantino's gun. Officer Tarantino was shot in the abdomen, and fell to the ground, rolling in pain. Nevertheless, Officer Tarantino got up and continued to fight with Petitioner. Petitioner dragged the officer and kicked him while dragging him. Petitioner was observed to beat Officer Tarantino in the head while he was lying on the ground with his head raised, as if he was pleading with Petitioner. Petitioner put the gun to Tarantino's head and shot him between the eyes. The witnesses thought they heard four shots. Petitioner was observed to throw the gun he used to a hill.
>
> Officer Tarantino died several hours later at the county hospital. The coroner's report revealed that Officer Tarantino's body was grossly traumatized: he was shot in the head and in the abdomen; substantial force which was unrelated to the shooting was applied to Officer Tarantino's head.
>
> Petitioner's driver's license was found in Officer Tarantino's shirt pocket, with a .22 caliber pistol. The pistol had been used in the December 3, 1972 murder of Doris Vogan, an Antioch liquor store clerk.

(Resp. Ex. D.)

The probation officer's report prepared prior to petitioner's sentencing indicated in addition that after petitioner shot Officer Tarantino between the eyes, he was observed to proceed to the officer's patrol car, and then return to his truck where he sat on the passenger's side with the door open. (Resp. Ex. C at 3.) A California Highway Patrolman drove up and petitioner approached with his hands in the air. (Resp. Ex. C at 3.) It was noted that petitioner's wrists were soaked with blood and there was blood above his right ear. (Resp. Ex. C at 3.) Blood and urine specimens were later taken and results showed petitioner's blood alcohol content to be .18 percent in one test and .19 percent in a second test. (Resp. Ex. C at 3.)

After his apprehension, petitioner told police that he and his cousin had taken a truckload of scrap metal to a junk dealer in Richmond and were on their way home when his

truck broke down. (Resp. Ex. C at 4.) Two unidentified black male adults drove up in a vehicle and requested assistance in finding an address in nearby Pittsburg. (Resp. Ex. C at 4.) Petitioner stated that he sent his cousin to Pittsburg with the men to bring back assistance for the broken down truck. (Resp. Ex. C at 4.) Petitioner states that he crawled underneath the truck to make emergency repairs so the vehicle could be towed to Pittsburg. (Resp. Ex. C at 5.) Petitioner stated that while he was under the truck, a Martinez police officer drove up, parked, and ordered him to come out from underneath the truck. (Resp. Ex. C at 5.) Petitioner stated that before he came out from underneath the truck, two unidentified black males on a single motorcycle drove up, shot the officer, and sped off at a high rate of speed. (Resp. Ex. C at 5.) Petitioner stated that he was attempting to assist the wounded officer when he was arrested. (Resp. Ex. C at 5.)

Petitioner was found guilty by jury of first degree murder, assault with a deadly weapon, and two counts of possession of a firearm by a convicted felon. (Resp. Ex. D.) He was sentenced to an indeterminate term of seven years to life in state prison. (Resp. Ex. D.) His minimum eligible parole date passed on April 16, 1980. (Resp. Ex. B at 2.)

On December 17, 2003, a panel of the Board of Prison Terms ("Board") conducted petitioner's tenth subsequent parole suitability hearing. When asked, petitioner maintained that he had not committed the crime in question, indicating that the officer was killed by one of the motorcyclists who came upon the scene. (Resp. Ex. B at 25.) After considering the positive and negative factors for petitioner's release, the panel determined that petitioner would pose an unreasonable risk of danger to society if released, and thus that he was unsuitable for parole. (Resp. Ex. B at 92.) Petitioner sought habeas corpus relief in the Solano County Superior Court. (Resp. Ex. D.) The matter was transferred to Contra Costa County, and the petition was denied. (Resp. Ex. D.) The California Court of Appeal, First District, and the California Supreme Court likewise denied petitioner's claims. (Resp. Ex. E & F.)

/////

/////

## III. ISSUES PRESENTED

The pending petition presents three separate grounds for relief. In the first ground, petitioner contends that there was no evidence to support the Board's determination that he would pose a risk of threat to the public if released and thus that he was not suitable for parole. Petitioner further contends in this ground that there is no support for the Board's recommendation that he seek therapy because he has no diagnosed need for therapy. For his second ground, petitioner claims that the application of California's parole suitability criteria to his case has caused him to serve a constitutionally disproportionate sentence. For his third ground, petitioner claims that the Board improperly relied upon the unchanging circumstances of his commitment offense in finding him unsuitable for parole. For purposes of this opinion, petitioner's claims will be analyzed under the following two inquiries (A) whether the Board's decision was supported by some reliable evidence in the record, in accordance with due process; and (B) whether the Board's decision has caused petitioner to serve a constitutionally disproportionate sentence in violation of the Eighth Amendment.

## IV. APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999). Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001). The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919 (2003).

## V. DISCUSSION

### A. Due Process

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person alleging a due process violation must first demonstrate that he or she was deprived of a protected liberty or property interest, and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. *Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 459-60 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

A protected liberty interest may arise from either the Due Process Clause itself or from state laws. *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987). The United States Constitution does not, in and of itself, create a protected liberty interest in a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981). However, where a state's statutory parole scheme uses mandatory language, it "creates a presumption that parole release will be granted" when or unless certain designated findings are made, thereby giving rise to a constitutional liberty interest. *McQuillion*, 306 F.3d at 901 (*quoting Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979)). The Ninth Circuit has conclusively determined that California state prisoners who have been sentenced to prison with the possibility of parole have a clearly established, constitutionally

5

protected liberty interest in receipt of a parole release date. *Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007) (*citing Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006)); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003); *McQuillion*, 306 F.3d at 903; and *Allen*, 482 U.S. at 377-78 (*quoting Greenholtz*, 442 U.S. at 12)).

The full panoply of rights afforded a defendant in a criminal proceeding is not constitutionally mandated in the context of a parole proceeding. *See Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). The Supreme Court has held that a parole board's procedures are constitutionally adequate if the inmate is given an opportunity to be heard and a decision informing him of the reasons he did not qualify for parole. *Greenholtz*, 442 U.S. at 16. In addition, the Ninth Circuit has conclusively determined that Supreme Court law clearly establishes that "some evidence" must support a parole decision. *Sass*, 461 F.3d at 1128-29; *McQuillion*, 306 F.3d at 904.

Under the some evidence standard, a decision cannot be "without support" or "arbitrary." *McQuillion*, 306 F.3d at 904 (*citing Superintendent v. Hill*, 472 U.S. 445, 457 (1985)); *Biggs*, 334 F.3d at 915. It must have some indicia of reliability. *Id*. The standard is "minimally stringent," and a decision must be upheld if there is any evidence in the record that could support the conclusion reached. *Powell v. Gomez*, 33 F.3d at 40 (*citing Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987)); *Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir. 1986). Examination of the entire record is not required. *Id*. The Supreme Court has specifically directed reviewing courts not to assess the credibility of witnesses or re-weigh the evidence. *Hill*, 472 U.S. at 455. The only relevant question is whether there is *any* reliable evidence in the record that could support the decision reached. *See Id.*; *Toussaint*, 801 F.2d at 1105.

In evaluating whether some evidence supported the Board's decision, the analysis "is framed by the statutes and regulations governing parole suitability determinations in the relevant state." *Irons*, 505 F.3d at 851. Thus, this court is bound by California's construction of its own parole suitability laws. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). The court

"must look to California law to determine the findings that are necessary to deem [a petitioner] unsuitable for parole, and then must review the record to determine whether the state court decision holding that these findings were supported by 'some evidence' [ ] constituted an unreasonable application of the 'some evidence' principle." *Id*.

Title 15, Section 2402 of the California Code of Regulations sets forth various factors to be considered by the Board in its parole suitability findings for murderers. The regulation is designed to guide the Board's assessment of whether the inmate poses "an unreasonable risk of danger to society if released from prison," and thus whether he or she is suitable for parole. *In re Lawrence*, 44 Cal.4th 1181, 1214, 1202 (2008). The Board is directed to consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

15 Cal. Code Regs. § 2402(b). The regulation also lists several specific circumstances which tend to show suitability or unsuitability for parole. 15 Cal. Code Regs. § 2402(c)-(d). The overriding concern is public safety and the focus is on the inmate's *current* dangerousness. *In re Lawrence*, 44 Cal. 4th at 1205. Thus, the proper articulation of the standard of review is not whether some evidence supports the reasons cited for denying parole, but whether some evidence indicates that a parolee's release would unreasonably endanger public safety. *In re Shaputis*, 44 Cal.4th 1241, 1254 (2008). In other words, there must be some rational nexus between the facts relied upon and the ultimate conclusion that the prisoner continues to be a threat to public safety. *In re Lawrence*, 44 Cal. 4th at 1227.

Here, the Board determined that petitioner was not suitable for parole, in part, because of the nature of his offense. A prisoner's commitment offense can be a parole

unsuitability factor where it was committed in an especially heinous, atrocious or cruel manner. 15 Cal. Code Regs. § 2402(c)(1). The facts of a commitment offense can alone be a sufficient basis for denying parole where they are especially heinous or particularly egregious. *In re Rosenkrantz*, 29 Cal.4th 616, 682 (2002); s*ee also Biggs v. Terhune*, 334 F.3d 910, 913-16 (9th Cir. 2003); *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1126 (9th Cir. 2006); *Irons v. Carey*, 505 F.3d 846, 852-53 (9th Cir. 2007).[1] The Ninth Circuit has cautioned, however, that repeated denial based solely on an inmate's commitment offense "will at some point violate due process" where there is evidence of rehabilitation and the prisoner has served the minimum term on his sentence. S*ee also Irons*, 505 F.3d at 853-54.

In this case, as set forth above, petitioner denied at his parole suitability hearing that he had murdered Officer Tarantino. (Resp. Ex. B at 25.) It was explained to petitioner that, although he was not required to admit guilt to the offense in question, the Board would accept as true all findings of the court. (Resp. Ex. B at 19-20.)

The Board went on to conclude that petitioner was unsuitable for parole, in part, because of the nature of his commitment offense which it found to be especially heinous, atrocious or cruel. The relevant circumstances found by the Board regarding this factor were (1) that the offense was carried out in a dispassionate and calculated manner (15 Cal. Code Regs. § 2402(c)(1)(B); (2) that the victim was abused, defiled, or mutilated during the offense (15 Cal. Code Regs. § 2402(c)(1)(C); (3) that the offense was carried out in a manner which demonstrated an exceptionally callous disregard for human suffering (15 Cal. Code Regs. § 2402(c)(1)(D)); and (4) that the motive for the crime was inexplicable or very trivial in relation to the offense (15

---

[1] In another case, *Hayward v. Marshall* (512 F.3d 536, 546-47 (9th Cir. 2008), a panel of the Ninth Circuit determined that under the "unusual circumstances" of that case, the unchanging factor of the gravity of the petitioner's commitment offense did not, by itself, constitute some evidence supporting the governor's decision to reverse a parole grant on the basis that the petitioner would pose a continuing danger to society. However, on May 16, 2008, the Court of Appeals vacated the decision in order to rehear it en banc. *Hayward v. Marshall*, 527 F.3d 797 (9th Cir. 2008). Therefore, the panel decision in *Hayward* is no longer citable precedent.

Cal. Code Regs. § 2402(c)(1)(E)). The presiding commissioner pointed to factors beyond the minimum element of the crime (see *In re Dannenberg*, 34 Cal.4th 1061, 1071 (2005)), stating in his reading of the decision that

> [o]ne, we feel that the offense was carried out in an especially cruel and callous manner. You killed a person that was responding to help you, a police officer, to a call for aid. The offense was carried out in a manner such as an execution-style murder. And I say execution-style murder because of the way the officer was shot down. He was shot -- he was shot once in the stomach. Then according to the record, he was shot in the head. So we consider that an execution kind of murder. Certainly we feel that the victim was abused during the offense. And we say abused because he was kicked and he was beaten. And according to the reports, he was pleading for his life. The offense was carried out in a manner that demonstrates an exceptionally callous disregard for another human being. Not to mention a person that's sworn to protect the public, but for another human being. It showed just a callous disregard and I say that because of the way the murder was carried out. As I previously articulated to you, he was (inaudible), kicked, beaten, shot in the stomach, and shot in the head. And the motive for the crime, we haven't (indiscernible) whatever the motive was and it was hard for the Panel to determine the motive.

(Resp. Ex. 2 at 92-92.)

The Board also considered petitioner's criminal history and previous record of violence. 15 Cal. Code Regs. § 2402(c)(2). A prisoner's record of violence is an unsuitability factor where the prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim. *Id*. In this case, the panel noted that petitioner has a record of violent behavior and that he has shown an escalating pattern of criminal conduct through the years. First and foremost, petitioner has a prior conviction for voluntary manslaughter, sustained after he and a friend reportedly got into a gunfight with some other men. (Resp. Ex. 2 at 34-35, 93.) Petitioner also has been arrested for burglary, forgery of a government check, suspicion of robbery, and disorderly conduct. (Resp. Ex. 2 at 33.) He has prior convictions for theft, contributing to the delinquency of a minor by engaging in acts of sexual intercourse, burglary, forgery of checks, and disturbing the peace. (Resp. Ex. 2 at 33-34.) As summarized by the presiding commissioner:

/////

|   |   |
|---|---|
| 1 | according to the records, you were in and out of either juvenile hall |
| 2 | or the prison system or jail or under the direct control of some judicial system since the age of 14. And that's according to the |
| 3 | record. I know you've disputed that. You said 18. [ ] You've failed previous grants of probation and parole. You were on parole |
| 4 | when you committed this crime. And you cannot be counted upon to avoid criminality. You've failed to profit from society's |
| 5 | repeated attempts to correct your criminality. That included juvenile probation, adult probation, parole, county jail, two |
| 6 | commitments to CYA and a commitment, a prior commitment, to the Department of Corrections. |

(Resp. Ex. 2 at 94.) For those same reasons, the panel found as another parole unsuitability factor that petitioner had an unstable social history (15 Cal. Code Regs. §2402(c)(3)):

> Now, under unstable social history, if we take your criminality in its totality, it would be hard for this Board not to conclude that you had an unstable social history, starting at the age of 14. And we say that because the records indicate, as I previously articulated to you, that you've been under the control of some type of judicial -- some type of law enforcement agency or judicial, correctional, since you were 14 years of age.

(Resp. Ex. 2 at 94-95.)

The Board did commend petitioner for showing sings of improvement:

> The recent psychological report, dated June 24th, 1999, shows that you have made some progress. It shows that [your] level of dangerousness, certainly in a structured environment such as a prison setting, is reduced. It also shows that if you're released, that your level of dangerousness appears to be no more than the average prison population. So this shows that it's reduced on the outside too. So certainly, from the psychological standpoint, it shows that you're making progress... [ ] The prisoner does have some parole plans. (Indiscernible) that you have residential plans. You have support letters in the file. Your employment plan, we have some concerns about your employment plan. Certainly, you do have some -- according to the file (indiscernible), we note that you have some money in the bank and that's a good thing. And you do have some skills that you could put to use upon your release... Certainly we want to commend the prisoner for the work reports that he's received. And we want to commend him for not receiving any disciplinaries [since 1991].

(Resp. Ex. 2 at 95-97.)

Ultimately, the Board concluded that petitioner's long history of criminality and negative behavior outweighed the positive factors for his release. (Resp. Ex. 2 at 96.) In sum,

the panel felt that unless further progress was made, petitioner continued to pose an unpredictable risk of threat to others and that there was no way to be sure that he would act differently than he had before in an unstructured environment. (Resp. Ex. 2 at 96.) The panel found that petitioner needed to "continue to fine tune his abilities to be able to face, discuss, understand and cope with stressful situations in a nondestructive manner." (Resp. Ex. 2 at 96.) Despite petitioner's argument to the contrary, there is some reliable evidence in the record to support the Board's conclusion in this regard.

The record indicates that petitioner had participated in only limited self help programming other than Alcoholics Anonymous. (Resp. Ex. 2 at 55.) In addition to his participation in Alcoholics Anonymous, the Board noted only that petitioner had completed one eight week Anger Control class and one nine week Rational Behavior Training Course in 1990, in addition to Inmate Peer Education in 1999. (Resp. Ex. 2 at 55.)

In addition, petitioner's overall comments and responses given at the hearing failed to demonstrate significant rehabilitation. For example, when asked how he believed he could now function in society, given his extensive criminal history and the very brief amount of time he has spent as a free citizen, petitioner responded that he had learned the importance of how people perceive him, and that his best avenue is to remain "above suspicion" since people will perceive him as a suspect regardless of whether he is guilty. (Resp. Ex. 2 at 39-41.) As implied by the presiding commissioner for the Board, this response minimized petitioner's own role in the events that led to him being criminally convicted of murder and sentenced to the indeterminate life term he is currently serving.

The Board cannot require petitioner to admit guilt in order to be found suitable for parole. Cal. Penal Code §5011(b); 15 Cal Code Regs. § 2236. The Board must, though, consider his "past and present attitude toward the crime" (15 Cal. Code Regs. § 2402(b)) and any lack of remorse or understanding of the nature and magnitude of the offense (15 Cal. Code Regs. § 2402(d)(3)). *In re McClendon*, 113 Cal. App.4th 315, 322 (1st Dist. 2003). In this case,

petitioner's explanation for how he will fare in free society is wholly unsatisfactory if his insight is limited to the newfound knowledge that he will stay out of trouble if he conducts himself above suspicion. Petitioner also indicated that he had matured and learned, but did not really elaborate on what he has learned other than the importance of avoiding trouble because of how other people perceive him. One could infer that, at the hearing, petitioner displayed an overall attitude of minimizing culpability with respect to his commitment offense, his previous criminality, including his prior manslaughter conviction, and even the minor disciplinary infractions he has received in prison. (*See*, e.g., Resp. Ex. 2 at 35-36; 42-43.)

While the Board in this case did appear to rely heavily on petitioner's commitment offense and other unchanging factors (prior criminal history and unstable social history) in finding him to be unsuitable for parole, this is not a case in which such reliance has resulted in a due process violation. There is a rational nexus between the egregious nature of petitioner's commitment offense and the ultimate conclusion that he continues to be a threat to public safety. Petitioner's life crime was not an isolated incident. The record indicates that he has been under the control of some type of law enforcement or correctional agency almost continuously since he was 14 years old. He incurred a previous conviction for manslaughter and was on parole for that offense when he committed the murder which resulted in the life term currently being served. Although petitioner had not incurred any disciplinary actions while in prison for more than a decade prior to the parole suitability hearing at issue, his overall attitude and comments at the hearing failed to demonstrate that he would be able to act differently than he did before in an unstructured environment, if paroled. *See In re Shaputis*, 44 Cal.4th at 1261 n.20 ("petitioner's failure to take full responsibility for past violence, and his lack of insight into his behavior, establish that the circumstances of petitioner's crime and violent background *continue* to be probative to the issue of his *current* dangerousness.")

The record contains with respect to an assessment of petitioner's current dangerousness both positive and negative factors, which this court is precluded from re-

weighing. Due process requires that the Board's decision be supported by some evidence in the record and that modicum is present in this case. The Board's decision meets the minimally stringent test set forth by the Supreme Court and applied by the Ninth Circuit in *Biggs*, *Sass*, and *Irons*. The decision of the Contra Costa County Superior Court upholding the Board's denial of parole is not contrary to, or an unreasonable application of any clearly established due process law, as determined by the Supreme Court. Accordingly, petitioner is not entitled to relief on his claim that the Board's decision finding him unsuitable for parole violated his right to due process.

B. Eighth Amendment

Petitioner additionally contends that the Board's denial of parole has implicated his Eighth Amendment right to be free from cruel and unusual punishment. A criminal sentence that is not proportionate to the crime of conviction may indeed violate the Eighth Amendment. Outside of the capital punishment context, however, the Eighth Amendment "forbids only extreme sentences that are grossly disproportionate to the crime." *United States v. Bland*, 961 F.2d 123, 129 (9th Cir. 1992) (*quoting Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring). The gross disproportionality rule set forth by the Supreme Court in *Harmelin* is the only clearly established law applicable to petitioner's Eighth Amendment challenges to the Board's decision. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003).

The threshold for an inference of gross disproportionality is high. Generally, so long as the sentence imposed by the state court does not exceed statutory maximums, it will not be considered cruel and unusual punishment under the Eighth Amendment. *United States v. McDougherty*, 902 F.2d 569, 576 (9th Cir. 1990); *United States v. Mejia-Mesa*, 153 F.3d 925, 930 (9th Cir. 1998) ("punishment within legislatively mandated guidelines is presumptively valid").

In *Harmelin v. Michigan*, the Supreme Court held that a term of life in prison without the possibility of parole is not disproportionate to the crime of possession of 672 grams

of cocaine. 501 U.S. 957, 1009 (1991). As the Ninth Circuit observed, "[u]nder *Harmelin*, it is clear that a mandatory life sentence for murder does not constitute cruel and unusual punishment." *United States v. LaFleur*, 971 F.2d 200, 211 (9th Cir. 1991). Of course, in this case, petitioner did not receive a mandatory life sentence, but rather, a life sentence which carries the possibility of parole. Petitioner contends that, by relying on unchanging circumstances to deny him a parole release date, the Board has effectively transformed his sentence into one *without* the possibility of parole. This argument must be rejected. So long as the Board's decision is supported by some evidence in the record, as it was in this case, it cannot be said that petitioner's sentence has been converted to one of life without the possibility of parole. The decision of the Contra Costa County Superior Court upholding the Board's denial of parole is not contrary to, or an unreasonable application of the gross disproportionality principle. Accordingly, petitioner is not entitled to relief on his claim that the Board's decision finding him unsuitable for parole has caused him to serve a constitutionally disproportionate sentence in violation of the Eighth Amendment.

## VI. CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that Petitioner's application for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 4, 2009

*/s/ Charlene H. Sorrentino*
CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE

14